(C. D. 910)

N. R. COLEMAN *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 7, 1945)

*John D. Rode* (*J. L. Klingaman* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil* and *Arthur R. Martoccia*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

KINCHELOE, Judge: The merchandise the classification of which is here under consideration consists of pieces of jute burlap, some of which are colored and some not colored. They were assessed for duty

at the rate of 40 per centum ad valorem under paragraph 1023 of the Tariff Act of 1930, as manufactures of vegetable fiber, other than cotton, not specially provided for. The merchandise is claimed by the plaintiff, among other things, to be dutiable as jute fabrics under paragraph 1008 of said act, the uncolored ones at 1 cent per pound, and the colored at 1 cent per pound and 10 per centum ad valorem.

The plaintiff appeared as a witness and introduced in evidence two representative pieces of the involved merchandise, which were marked in evidence as collective exhibit 1 (A) and collective exhibit 1 (B), respectively. Collective exhibit 1 (A) consists of a piece of plain woven jute fabric about 66 inches long and 15½ inches wide; collective exhibit 1 (B) consists of a piece of burlap about 78 inches long and 18 inches wide, of heavier material, with four colored stripes running lengthwise, and of twill weave. Both exhibits in addition have fast or selvage edges, and the cut ends are hemmed. Exhibit 1 (B) is of heavier material than exhibit 1 (A).

The said witness testified that he is the importer of the merchandise in question, and that he has been a tobacco dealer since 1909; that the imported pieces of burlap are not used in their imported condition, but that several of the pieces are sewed together after importation for use in wrapping tobacco. To show to what use he put the pieces of the imported merchandise he put in evidence two large pieces of fabric, marked collective illustrative exhibit A. An inspection of these two exhibits shows that they consist in each instance of five pieces of the original merchandise sewed together side to side. In this condition the plain uncolored jute fabric measures about 5½ by 6½ feet, and the colored striped fabric measures about 6 by 7½ feet.

The witness testified further that he uses these large sewed-together pieces of the imported merchandise for wrapping leaf tobacco for transportation from the loose-leaf auction warehouse to the factory, and that that is the only use he knows of the merchandise in the condition of illustrative exhibit A. In regard to the imported merchandise in the form of collective exhibit 1, the witness stated that he has seen it used for other purposes than he uses it, namely, principally, as bagging for various kinds of merchandise, such as fertilizer, nails, or hardware, and that when used for bagging purposes the pieces, of course, have to be sewed into bags; that he has also seen the merchandise used for covering bales of rugs and other articles, and by nurserymen to wrap around shrubs, and also over the tops of barrels holding fish. The witness could not tell, however, whether the jute burlap that he saw used for the other purposes mentioned was of the same length and width of the present merchandise, nor whether it was hemmed. The same witness further stated that he ordered the merchandise as jute fabric; that he tried to get it in wider widths, or about the size of the finished article as represented by illustrative

exhibit A, but was unable to, and he then took what he could get. Also that he did not order the pieces of jute fabric hemmed; that the hem is to keep the fabric from raveling, and that if they were not hemmed he would have had them hemmed himself to keep the ends from fraying.

The Government called as one of its witnesses Michael Schramm, who has been an examiner of merchandise at the port of New York for about 3 years, and who at present advisorily classifies tobacco, cigars, and other tobacco products. He stated he had seen merchandise like exhibit 1, the striped piece, around bales of imported Turkish and Grecian tobacco, but did not know as to the quality; that burlap about the sizes and widths of exhibit 1 was wrapped around four sides of the bale, and that on the other two sides a plain piece of burlap was sewed to the other piece. He did not recall whether the pieces of fabric were hemmed or not. He admitted, however, that he never saw or ever knew of any domestic tobacco wrapped in this way.

The Government called as its next witness Morey Gundy, an examiner of merchandise at New York for 13 years. He testified that he has advisorily classified about 10 million yards of burlap, and saw it in all its widths and lengths; that he never before saw merchandise of the width and length of exhibit 1; that he has seen it on bales of imported tobacco wrapped around the tobacco in the manner and condition as described by the previous witness. He stated further that he has handled nursery burlap, known as nursery squares, all the time he has been examiner; that he has seen it used, but not in the lengths nor widths of exhibit 1, and that he never saw it hemmed; that burlap used for barrel tops is usually squares cut from burlap about 40 inches wide; that the uncolored piece of exhibit 1 might do as to quality, but not the width, as barrel tops are generally wider; that no one would use heavy twill for barrel tops, as it would be too expensive, and it would not have a selvage or hems; that he has seen burlap used for bags of nails or hardware, and that there are very few special burlaps used for any specific purpose. On cross-examination the witness stated that merchandise like exhibit 1 could be used to cover a small barrel or to make a small bag, but that economically it would be prohibitive, as the material is expensive. He also admitted that as many pieces of exhibit 1 as necessary could be sewed together to wrap almost anything, but that for practical purposes it could not be sold; also, that the fact that the pieces are hemmed does not prohibit them from being used as a bag, nor does the fact that four or five pieces are sewed together prohibit its use for making a wrapping for any purpose.

The contention of the Government is that paragraph 1008 under which the imported merchandise is claimed dutiable is limited to

woven jute fabrics, and that as the imported pieces were hemmed at the ends it removes them from the category of jute fabrics, and places them for duty purposes under paragraph 1023 as manufactures of vegetable fiber, as assessed. Also that the hemming of the ends has limited the use of the instant merchandise, and has dedicated it to the specific use for wrapping tobacco.

We hardly think that the record supports such conclusion. While the Government's witnesses stated that they have seen importations of Turkish or Grecian tobacco wrapped with pieces of jute fabric very similar to the imported, they admitted that they never saw domestic tobacco so wrapped in this country, and the importer testified that he bought the pieces of fabric to sew into larger pieces for wrapping tobacco, as shown by illustrative exhibit A, and that he has seen it used for various other purposes such as bagging for nails, hardware, fertilizer, and as coverings for bales of rugs and other articles. It is true that the plaintiff did not know whether the burlap that he saw used for the purposes stated was of the exact length, width, or quality of the imported pieces, or whether it was hemmed or not, but the fact remains that while the imported pieces of jute fabric may not be adaptable for all of the general uses of jute fabrics in the piece as woven on the loom, they nevertheless still retain all the characteristics of fabric for sewing together into larger pieces, or for cutting into smaller pieces or articles, if desired. There seems to be no change in name or use, and the testimony of the Government fails to show that there was any dedication of the merchandise for any particular use or for any particular article. The hemmed condition of the pieces themselves has hardly changed their character as fabrics in the present instance. Note (G. A. 4337, T. D. 20611, 1 Treas. Dec. 196), on buckram and (G. A. 7104, T. D. 30967, 19 Treas. Dec. 1000), on brattice cloth.

The Government has cited the case of *Lamb, Finlay & o.C* v. *United States*, 6 Ct. Cust. Appls. 115, T. D. 35386, on flax scarfing as supporting its contention that the imported merchandise is dutiable as a manufacture of vegetable fiber rather than as jute fabric. In that case the merchandise consisted of white woven linen fabrics, weighing less than 4½ ounces per square yard, hemstitched on both sides. It had been woven on a plain loom, with a suitable number of warp threads omitted on both sides to prepare it for hemstitching, after which it was hemstitched in a hemstitching machine by doubling over the edge on both sides and fastening it at regular intervals, leaving an openwork where hemstitched. In its imported condition the fabric was about 18 or 20 inches wide and of a length not stated. Duty was assessed thereon under paragraph 358 of the Tariff Act of 1909, providing for "all woven articles, finished or unfinished, and all manufactures of flax, hemp, ramie, or other vegetable fiber," and was

claimed dutiable under paragraph 357, which, so far as relevant, reads as follows:

PAR. 357. Woven fabrics and articles not specially provided for in this section, composed of flax, hemp, or ramie, * * * weighing 4½ ounces or more per square yard * * *. Plain woven fabrics, not including articles, finished or unfinished, of flax, hemp, or ramie, * * *.

The appellate court held that the merchandise was not an article finished or unfinished, and that on account of the ornamental hemstitched borders thereon it was advanced beyond the condition of a plain woven fabric. It was further held by the court that the weight of the merchandise excluded it from the first part of paragraph 357, and that by its condition it was excluded from the latter part of that paragraph providing for *plain woven fabrics* of flax, etc. The collector's assessment of duty under paragraph 358 as a manufacture of flax was therefore upheld.

In the present instance the paragraph under which the importing company claims (par. 1008, act of 1930) provides for woven fabrics of jute, and is not limited to plain woven fabrics of jute. Furthermore, it appears that the hemming of the ends of the pieces of jute fabric here in question was to prevent unraveling of the jute yarns, and the plain hemming of the coarse jute fabric at the cut ends certainly has not ornamented the fabric in any way, nor enhanced it in value, so far as the record shows. The case relied on by the Government is, therefore, in our judgment, not controlling here.

The plaintiff has referred to the case of *United States* v. *Grasselli Chemical Co.*, 5 Ct. Cust. Appls. 320, T. D. 34527, as supporting its claim for classification of the involved merchandise as woven fabrics of jute. The merchandise in that case consisted of a plain, loose, open weave of thick asbestos cords, about 54 inches long and 30 inches wide. The warp threads were turned back on the fabric and bound to it by sewing over them with asbestos threads a closely woven band of asbestos cloth a little less than an inch in width. It had been assessed for duty under that part of paragraph 462 of the Tariff Act of 1909, reading, "woven fabrics composed wholly or in chief value of asbestos," at 40 per centum ad valorem. It was claimed dutiable under the first part of the same paragraph as articles of asbestos. The binding of the edges had been to prevent unraveling. The court, in holding the merchandise dutiable as woven asbestos fabrics under the latter part of paragraph 462, used the following language:

The body of the fabric involved in this appeal and the material with which it is bound are of woven asbestos. The binding, it is true, is stitched to the goods, and to that extent it may be said that the product has been subjected to a process other than that of weaving. Inasmuch, however, as one purpose of the binding was apparently to prevent the unraveling of the fabric and to preserve the weave, we think the goods are woven fabrics as that expression is commonly understood,

and that they are therefore within the intent and meaning of the last clause of paragraph 462.

What has been said by the court with reference to the binding in the foregoing case we think can well apply to the hem in the present instance. At any rate, there is no evidence showing that the hemming of the instant merchandise serves any purpose except to prevent unraveling of the fabric, and, in our opinion, the evidence otherwise shows that the said pieces of jute fabric in their condition as imported still retained their character as fabric for use by sewing together into larger pieces or by cutting into smaller pieces or articles for various bagging and wrapping purposes. It is also shown that the merchandise is not otherwise bleached, printed, stenciled, painted, dyed, or rendered noninflammable.

On the record the claim of the plaintiff under paragraph 1008 of the Tariff Act of 1930 is therefore sustained, the uncolored fabric being held dutiable at 1 cent per pound, and the colored fabric at 1 cent per pound and 10 per centum ad valorem. The protest is, however, overruled in all other respects.